**"O"**

# UNITED  STATES  DISTRICT  COURT

## FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BRILEY, JUSTIN THOMAS,<br><br>       **Plaintiffs,**<br><br>       **v.**<br><br>CITY OF HERMOSA BEACH, CHIEF MICHAEL LAVIN, JONATHAN SIBBALD, LANDON PHILLIPS, SGT. NANCY COOK, AND DOES 1-10, INCLUSIVE,<br><br>       **Defendants.**<br>_____ | **CASE NO. CV 05-8127 AG (SHx)**<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION OF PLAINTIFFS' "CONSPIRACY" CLAIMS** |

This case deals with the claims of two individuals who were arrested after a short struggle at the Hermosa Beach Pier Plaza on the Fourth of July.  Before the Court is the Motion of the Defendants, City of Hermosa Beach, Chief Michael Lavin, Jonathon Sibbald, Landon Phillips, and Sgt. Nancy Cook ("Hermosa Beach Defendants") for Summary Adjudication of Plaintiff's "Conspiracy" Claims.  After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court GRANTS the Motion.

## BACKGROUND

The facts of this case are set forth in this Court's order dealing with Defendants' Motion for Summary Judgment, or in the Alternative Summary Adjudication of Plaintiffs' "False Arrest" and "Excessive Force" Claims ("False Arrest Order"). The Court restates them here.

On the afternoon of July 4, 2003, Plaintiffs Christopher Briley and Justin Thomas went to the crowded Hermosa Beach Pier Plaza area with a group of friends. (Plaintiffs' Responses to Defendants' Statements of Uncontroverted Facts and Conclusions of Law in Opposition of Motion for Summary Judgment, or in the Alternative Summary Adjudication of Plaintiffs' "False Arrest" and "Excessive Force" Claims ("Responses") ¶ 3.) They walked along the Strand, which is a pedestrian walkway bordering the beach. (*Id.* ¶ 4.) During their walk, one member of the group, Randy Wareberg, encountered a man named Shaun Gallagher. The two men began to have an argument. (*Id.* ¶¶ 4-5.) Their interaction caused Hermosa Beach Police Officer Jonathan Sibbald to separate them and to order them to leave the beach. (*Id.* ¶ 6-7.)

Wareberg, Briley, and Thomas continued to walk along the Strand approximately two blocks until they reached the Pier Plaza. (*Id.* ¶ 8; Thomas Deposition 151:9.) Once there, in a crowded area, Wareberg again encountered Gallagher. (Responses ¶ 8.) The interaction on the Pier Plaza between Wareberg and Gallagher and the subsequent events is recorded on a video filmed by local college students. (Harrell Declaration, Exhibit A ("Video").) The following recitation of facts is drawn from facts agreed upon by the parties and from the Court's independent viewing of the video. The Court describes portions of the video that are indisputable. *See Scott v. Harris*, 127 S.Ct. 1769, 1774-1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by [a video], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

The video undisputedly shows Wareberg and Gallagher gesturing, speaking, and posturing as if to fight, while other civilians try to separate them. (Responses ¶¶ 9-10; Video

2:11:00-2:32:20.)  Plaintiff Thomas testified that the interaction escalated into a "group thing" between Plaintiffs' group and Gallagher's friends, and that "they all looked like they wanted to fight."  (Responses ¶ 11.)  Officer Sibbald then approaches Wareberg, grabs him by the throat with his left hand, and pushes him back approximately five steps before taking him to the ground.  (Responses ¶ 12; Video 2:32:29-2:37:06.)  Officer Sibbald holds Wareberg in a seated position on the ground and handcuffs his hands behind his back.  (Responses ¶ 13; Video 2:47:28-3:02:22.)  At this point, other uniformed officers appear on the scene, and they create a perimeter around Officer Sibbald and Wareberg, forcing the shouting crowd of hundreds of people to move outside of it.  (Responses ¶¶ 14-17; Video 2:38:00-2:46:00.)  The officers push people who do not honor the perimeter, which is approximately thirty feet in diameter.  (Video 2:38:00-2:46:00.)  Sergeant Cook is seen to wrench the finger of Plaintiff Thomas, who was standing inside the perimeter, while telling him to "Back up!"  (Responses ¶¶ 20, 22; Video 2:40:17-2:42:00.)

At this point, the video cuts away from the action at what appears to be a pivotal moment. When the camera swings back to the action, Plaintiff Briley is seen in an altercation with three police officers.  (Video 3:21:00-3:26:00.)  They attempt to restrain him, one from the front, one from the back, and one from the side, and he tries to keep them away.  (*Id.*)  He spreads his arms and shouts, "I ain't doing shit!" before being taken to the ground.  (Video 3:31:29.)  The officers struggle to place his hands behind his back to handcuff him.  (Video 3:32:30-3:45:20.)

While Briley and the police officers are struggling, Plaintiff Thomas seems to be misguidedly attempting to calm the situation.  He enters the perimeter, moves around Sergeant Cook who is watching the struggle, approaches close to Briley and the officers, and repeatedly shouts, "Briley, kick it!  Kick it!" (Video 3:24:20-3:26:00.)  Sergeant Cook then notices him, puts her arm across his chest, says, "Get out of here," and pushes him back away from Briley and the other officers.  (Responses ¶ 46; Video 3:25:00-3:28:00.)  Despite Sergeant Cook's efforts, Thomas remains inside the perimeter and continues to attempt to move toward and shout at Briley.  (Video 3:31:26-3:34:28.)  He testified that he wanted to stay, instead of leaving as

1    ordered, because "[s]omebody had to be there to witness what was going on." (Responses ¶ 48.)

2    Eventually, as Thomas continues to approach Briley and the officers, Sergeant Cook wraps her

3    arms around Thomas's waist, pulls him away from Briley and the officers, and takes him to the

4    ground. (Responses ¶ 55; Video 3:46:00-3:48:00.) With Sergeant Cook holding his waist,

5    Thomas pushes himself back into a standing position. (Responses ¶ 56; Video 3:48:06-3:50:10.)

6    He resists Sergeant Cook's continued efforts to take him back to the ground. (Video 3:51:00-

7    3:57:00.)

8         At this point, Officer Phillips grabs Thomas around the neck and pulls Thomas to the

9    ground as Sergeant Cook holds on to his legs. (Responses ¶ 62; Video 3:57:00-3:59:20.) With

10   two officers trying to keep him on the ground, Thomas again pushes off the ground and gets to

11   his knees. (Responses ¶ 63; Video 4:00:00-4:18:00.) Members of the crowd then throw loud,

12   exploding fireworks into the circle. (Responses ¶ 64; Video 4:10:00-4:35:00.) Next, Officer

13   Sibbald walks toward Sergeant Cook, Officer Phillips, and Thomas. (Responses ¶ 65; Video

14   4:21:00.) As Officer Sibbald reaches the struggling group, he turns around and looks in the

15   direction he came from. (Video 4:24:18.) He says, "Hey!" and runs back to Briley, who is

16   standing with his hands handcuffed behind his back. (Video 4:25:11-4:27:00.) Briley was last

17   shown on the ground forty-one seconds before. (Video 3:46:00.) Officer Sibbald, reaching

18   Briley, puts his arm around his throat and takes him to the ground. (Video 4:27:00-4:26:10.)

19   Officer Sibbald then leaves Briley on the ground and walks back toward Sergeant Cook, Officer

20   Phillips, and Thomas. (Responses ¶ 69; Video 4:28:28.) Briley then stands back up and steps

21   toward Officer Sibbald. (Responses ¶ 69; Video 4:30:00-4:32:00.) Officer Sibbald, seeing

22   Briley standing again, grabs him and forces him to the ground for a third time. (Responses ¶¶ 71,

23   91; Video 4:34:00-4:45:00.) Sibbald holds Briley on the ground with his knee on his chest until

24   other officers arrive on the scene. (Responses ¶ 71; Video 4:34:00-4:45:00.)

25        Ultimately, both Plaintiffs were taken to the Hermosa Beach Jail where they were booked

26   and cited. On July 19, 2003, a criminal complaint was filed against the Plaintiffs, charging them

27   each with violations of Penal Code § 148(a)(1) (interfering with a peace officer). (Opposition

28

10:22-24.)  The complaint was later amended, adding a charge of battery and a charge of violation of California Penal Code § 415(1) (fighting or threatening to fight in a public place) against Briley.  (*Id.* at 10:24-11:1.)  At a jury trial in December 2006, Briley was acquitted of the two later-added charges.  On April 3, 2007, the deputy city prosecutor dismissed the § 148(a)(1) charges against both Plaintiffs.  On November 15, 2007, the Plaintiffs brought a complaint against the Hermosa Beach Defendants for multiple alleged wrongs, including claims for relief under 42 U.S.C. § 1983 for false arrest, excessive force, malicious prosecution, and conspiracy.

## **LEGAL STANDARD**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact.  *See id.* at 322-23.  If the non-moving party meets this burden, then the motion will be denied.  *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

**ANALYSIS**

Under 42 U.S.C. § 1983, a plaintiff must show that a defendant, acting under color of state law, deprived the plaintiff of rights secured by the Constitution or other federal laws. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  To prove conspiracy under 42 U.S.C. § 1983, an agreement or meeting of minds to violate the Plaintiffs' constitutional rights must be shown.  *Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989).  For each participant to an alleged conspiracy to be liable, each "need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989)

Because civil conspiracy is so easy to allege, plaintiffs have a "weighty burden" to prove it.  *Crowe v. County of San Diego*, 303 F.Supp.2d 1050, 1117 (S.D. Cal. 2004).  For a successful conspiracy claim, the plaintiff must allege facts showing conspiracy and the deprivation of constitutional or other legal rights.  *Aldabe*, 616 F.2d at 1092.  "Conclusory allegations" that the defendants conspired are insufficient to support a § 1983 claim.  *Id.* (citing *Finley v. Rittenhouse*, 416 F.2d 1186 (9th Cir. 1969)).

Plaintiffs allege a conspiracy to create the appearance of lawful justification for their actions, to fraudulently convict the Plaintiffs, and "to hide Phillips's unprovoked and unreasonable initiation of the use of force against Briley."  (Complaint 4:4-5, 5:26-28; Opposition 7:17-19.)  Plaintiffs allege that Officer Phillips jumped on Briley's back without warning, and that there was a meeting of minds among Defendants to suppress that fact.  (*Id.*) The police officers allegedly avoided mentioning the assault in their police reports, their internal affairs interviews, their criminal trial testimony, their testimony at Plaintiff Thomas's probation violation hearings, and their depositions in this case.  (*Id.* at 19-28.)

Indeed, none of the police reports of the three officers mentions an "unprovoked and unreasonable" use of force against Briley.  Officer Sibbald's police report notes that he observed Briley chest to chest with another individual as if to fight.  He notes that he contacted the other

individual, not Briley, and that Officer Phillips "contacted [Briley] and was ordering [him] to leave the area." (Plaintiffs' Exhibit F.) Officer Phillips's report states that he grabbed Briley and told him to leave, and Briley refused. (Plaintiffs' Exhibit G.) Officer Phillips then states that he attempted to grab Briley multiple times before finally taking Briley to the ground. (*Id.*) Sergeant Cook's report states that Officer Phillips ordered Briley and the other individual "to cease and desist from the near fisticuffs," that Briley did not comply, and that Briley was physically restrained and eventually taken into custody.

Plaintiffs' only proof of a conspiracy is the fact that the three police officers tell a similar version of the events, and that version differs from the Plaintiffs'. Although Plaintiffs argue that the video proves that Defendants lied in their police reports, the video does not show the act that Plaintiffs complain of, when Officer Phillips allegedly jumped on Plaintiff Briley's back without warning. Plaintiffs also argue that Eric Coleman's deposition supports their version of the events. It does not.

This is not sufficient evidence of a conspiracy. Courts emphasize that plaintiffs alleging conspiracy must carry a heavy burden. *See, e.g.*, *Crowe*, 303 F.Supp.2d at 1117; *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). The reasoning behind this holding is clear in this case. If this Court were to hold, based on only the evidence presented, that Plaintiffs had produced sufficient evidence of a conspiracy, then any person, telling a story different than that told by the police, could go to trial on a conspiracy claim. But, in cases such as this, the plaintiff's version of events almost always conflicts with that of the arresting officers. *See Newman v. County of Orange*, 457 F.3d 991, 995 (9th Cir. 2006). And the courts cannot allow every conspiracy claim to go forward.

Plaintiffs have not made a sufficient showing that the Defendants reached a meeting of the minds to deprive them of their constitutional rights. That an inference of conspiracy can be drawn from the evidence is not enough. For example, in *Hinkle*, 81 F.3d at 421, the plaintiff claimed that a police officer had shot a civilian in the back, and that the police department had conspired to hide the fact. As evidence, the plaintiff cited that one officer inexplicably disposed

of the civilian's sweatshirt, and that the chest wound was mysteriously excised from the body. *Id.* The plaintiff argued that the police did those things to hide evidence that the shot was in the back. *Id.* The court ruled that such evidence, requiring inferences of wrongdoing, was not enough. The court pointed out that the plaintiff did not produce any evidence that the defendants "acted in concert," did not "disclose any communication between [the Officers] that might give rise to an inference of an agreement to commit any acts," and did not produce evidence that would "give rise to an inference that each alleged conspirator shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 422. Similarly, here, the Plaintiff did not produce sufficient evidence.

"While we recognize that direct evidence of a conspiracy is not always available, we cannot use this fact as an excuse to forgive [a plaintiff's] failure to prove their case." *Id.* at 423.


**DISPOSITION**


Defendants' Motion is GRANTED as to all Defendants.


IT IS SO ORDERED.

DATED: September 29, 2008

_____
          Andrew J. Guilford
     United States District Judge