"O"

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BRILEY, JUSTIN THOMAS,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF HERMOSA BEACH, CHIEF MICHAEL LAVIN, JONATHAN SIBBALD, LANDON PHILLIPS, SGT. NANCY COOK, AND DOES 1-10, INCLUSIVE,<br><br>　　　　Defendants.<br>_____ | CASE NO. CV 05-8127 AG (SHx)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION OF PLAINTIFF'S "FALSE ARREST" AND "EXCESSIVE FORCE" CLAIMS |

　　This case deals with the claims of two individuals who were arrested after a short struggle at the Hermosa Beach Pier Plaza on the Fourth of July. Before the Court is the Motion of the Defendants, City of Hermosa Beach, Chief Michael Lavin, Jonathon Sibbald, Landon Phillips, and Sgt. Nancy Cook ("Hermosa Beach Defendants") for Summary Adjudication of Plaintiff's "False Arrest" and "Excessive Force" Claims. After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court GRANTS the Motion.

## BACKGROUND

On the afternoon of July 4, 2003, Plaintiffs Christopher Briley and Justin Thomas went to the crowded Hermosa Beach Pier Plaza area with a group of friends. (Plaintiffs' Responses to Defendants' Statements of Uncontroverted Facts and Conclusions of Law in Opposition of Motion for Summary Judgment, or in the Alternative Summary Adjudication of Plaintiffs' "False Arrest" and "Excessive Force" Claims ("Responses") ¶ 3.) They walked along the Strand, which is a pedestrian walkway bordering the beach. (*Id.* ¶ 4.) During their walk, one member of the group, Randy Wareberg, encountered a man named Shaun Gallagher. The two men began to have an argument. (*Id.* ¶¶ 4-5.) Their interaction caused Hermosa Beach Police Officer Jonathan Sibbald to separate them and to order them to leave the beach. (*Id.* ¶ 6-7.)

Wareberg, Briley, and Thomas continued to walk along the Strand approximately two blocks until they reached the Pier Plaza. (*Id.* ¶ 8; Thomas Deposition 151:9.) Once there, in a crowded area, Wareberg again encountered Gallagher. (Responses ¶ 8.) The interaction on the Pier Plaza between Wareberg and Gallagher and the subsequent events is recorded on a video filmed by local college students. (Harrell Declaration, Exhibit A ("Video").) The following recitation of facts is drawn from facts agreed upon by the parties and from the Court's independent viewing of the video. The Court describes portions of the video that are indisputable. *See Scott v. Harris*, 127 S.Ct. 1769, 1774-1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by [a video], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

The video undisputedly shows Wareberg and Gallagher gesturing, speaking, and posturing as if to fight, while other civilians try to separate them. (Responses ¶¶ 9-10; Video 2:11:00-2:32:20.) Plaintiff Thomas testified that the interaction escalated into a "group thing" between Plaintiffs' group and Gallagher's friends, and that "they all looked like they wanted to fight." (Responses ¶ 11.) Officer Sibbald then approaches Wareberg, grabs him by the throat

2

with his left hand, and pushes him back approximately five steps before taking him to the ground. (Responses ¶ 12; Video 2:32:29-2:37:06.) Officer Sibbald holds Wareberg in a seated position on the ground and handcuffs his hands behind his back. (Responses ¶ 13; Video 2:47:28-3:02:22.) At this point, other uniformed officers appear on the scene, and they create a perimeter around Officer Sibbald and Wareberg, forcing the shouting crowd of hundreds of people to move outside of it. (Responses ¶¶ 14-17; Video 2:38:00-2:46:00.) The officers push people who do not honor the perimeter, which is approximately thirty feet in diameter. (Video 2:38:00-2:46:00.) Sergeant Cook is seen to wrench the finger of Plaintiff Thomas, who was standing inside the perimeter, while telling him to "Back up!" (Responses ¶¶ 20, 22; Video 2:40:17-2:42:00.)

At this point, the video cuts away from the action at what appears to be a pivotal moment. When the camera swings back to the action, Plaintiff Briley is seen in an altercation with three police officers. (Video 3:21:00-3:26:00.) They attempt to restrain him, one from the front, one from the back, and one from the side, and he tries to keep them away. (*Id.*) He spreads his arms and shouts, "I ain't doing shit!" before being taken to the ground. (Video 3:31:29.) The officers struggle to place his hands behind his back to handcuff him. (Video 3:32:30-3:45:20.)

While Briley and the police officers are struggling, Plaintiff Thomas seems to be misguidedly attempting to calm the situation. He enters the perimeter, moves around Sergeant Cook who is watching the struggle, approaches close to Briley and the officers, and repeatedly shouts, "Briley, kick it! Kick it!" (Video 3:24:20-3:26:00.) Sergeant Cook then notices him, puts her arm across his chest, says, "Get out of here," and pushes him back away from Briley and the other officers. (Responses ¶ 46; Video 3:25:00-3:28:00.) Despite Sergeant Cook's efforts, Thomas remains inside the perimeter and continues to attempt to move toward and shout at Briley. (Video 3:31:26-3:34:28.) He testified that he wanted to stay, instead of leaving as ordered, because "[s]omebody had to be there to witness what was going on." (Responses ¶ 48.) Eventually, as Thomas continues to approach Briley and the officers, Sergeant Cook wraps her arms around Thomas's waist, pulls him away from Briley and the officers, and takes him to the

1  ground. (Responses ¶ 55; Video 3:46:00-3:48:00.) With Sergeant Cook holding his waist,
2  Thomas pushes himself back into a standing position. (Responses ¶ 56; Video 3:48:06-3:50:10.)
3  He resists Sergeant Cook's continued efforts to take him back to the ground. (Video 3:51:00-
4  3:57:00.)
5        At this point, Officer Phillips grabs Thomas around the neck and pulls Thomas to the
6  ground as Sergeant Cook holds on to his legs. (Responses ¶ 62; Video 3:57:00-3:59:20.) With
7  two officers trying to keep him on the ground, Thomas again pushes off the ground and gets to
8  his knees. (Responses ¶ 63; Video 4:00:00-4:18:00.) Members of the crowd then throw loud,
9  exploding fireworks into the circle. (Responses ¶ 64; Video 4:10:00-4:35:00.) Next, Officer
10 Sibbald walks toward Sergeant Cook, Officer Phillips, and Thomas. (Responses ¶ 65; Video
11 4:21:00.) As Officer Sibbald reaches the struggling group, he turns around and looks in the
12 direction he came from. (Video 4:24:18.) He says, "Hey!" and runs back to Briley, who is
13 standing with his hands handcuffed behind his back. (Video 4:25:11-4:27:00.) Briley was last
14 shown on the ground forty-one seconds before. (Video 3:46:00.) Officer Sibbald, reaching
15 Briley, puts his arm around his throat and takes him to the ground. (Video 4:27:00-4:26:10.)
16 Officer Sibbald then leaves Briley on the ground and walks back toward Sergeant Cook, Officer
17 Phillips, and Thomas. (Responses ¶ 69; Video 4:28:28.) Briley then stands back up and steps
18 toward Officer Sibbald. (Responses ¶ 69; Video 4:30:00-4:32:00.) Officer Sibbald, seeing
19 Briley standing again, grabs him and forces him to the ground for a third time. (Responses ¶¶ 71,
20 91; Video 4:34:00-4:45:00.) Sibbald holds Briley on the ground with his knee on his chest until
21 other officers arrive on the scene. (Responses ¶ 71; Video 4:34:00-4:45:00.)
22       Ultimately, both Plaintiffs were taken to the Hermosa Beach Jail where they were booked
23 and cited. On July 19, 2003, a criminal complaint was filed against the Plaintiffs, charging them
24 each with violations of Penal Code § 148(a)(1) (interfering with a peace officer). (Opposition
25 10:22-24.) The complaint was later amended, adding a charge of battery and a charge of
26 violation of California Penal Code § 415(1) (fighting or threatening to fight in a public place)
27 against Briley. (*Id.* at 10:24-11:1.) At a jury trial in December 2006, Briley was acquitted of the
28

4

two later-added charges.  On April 3, 2007, the deputy city prosecutor dismissed the § 148(a)(1) charges against both Plaintiffs.  On November 15, 2007, the Plaintiffs brought a complaint against the Hermosa Beach Defendants for multiple alleged wrongs, including claims for relief under 42 U.S.C. § 1983 for false arrest, excessive force, malicious prosecution, and conspiracy.

**LEGAL STANDARD**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact.  *See id.* at 322-23.  If the non-moving party meets this burden, then the motion will be denied.  *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

**ANALYSIS**

**1.     QUALIFIED IMMUNITY FOR SECTION 1983 CLAIMS**

A private right of action under 42 U.S.C. § 1983 exists against law enforcement officers who, acting under the color of authority, violate the federal constitutional or statutory rights of an individual. *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005) (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)). The defense of qualified immunity, however, shields an officer from trial when the officer reasonably misapprehends the law governing the circumstances confronted, even if the officer's conduct was constitutionally deficient. *Id*. (citing *Brosseau v. Haugen*, 543 U.S. 194 (2004) (per curiam)).

To rule upon qualified immunity of a government official as a matter of law, a court must first consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct would have violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Once the court has affirmatively made this determination, the court must then ask: (1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable official have believed his conduct was lawful? *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (citing *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir. 1995)). The reasonableness inquiry "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam). This accommodation for reasonable error exists because "officials should not err always on the side of caution" out of fear of legal liability. *Davis v. Scherer*, 468 U.S. 183, 196 (1984). Importantly, the United States Supreme Court has stated that "because the entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly have stressed the importance of resolving immunity questions at the earliest stage possible in litigation." *Hunter*, 502 U.S. at 227 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982); *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

6

## 2. PLAINTIFF BRILEY'S CLAIMS

### 2.1 Briley's Claim for False Arrest Violating his Federal Civil Rights

Briley claims that the Hermosa Beach Defendants falsely arrested him. The Hermosa Beach Defendants claim that his arrest was proper and move for summary judgment, arguing that Officer Phillips had probable cause to arrest Briley under California Penal Code § 415(1). California Penal Code § 415(1) provides that "[a]ny person who unlawfully fights in a public place or challenges another person in a public place to fight" shall be punished by imprisonment or a fine.

Probable cause must exist before an arrest. *Allen v. City of Portland*, 73 F.3d 232, 236-237 (9th Cir. 1995). But "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offence in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause exists when the police possess information "sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." *U.S. v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990). In making probable cause determinations, courts "look to the totality of the circumstances known to the officers." *Id.* (quoting United States v. Potter, 895 F.2d 1231, 1233-34 (9th Cir. 1990).

Probable cause requires "only the probability, and not a prima facie showing, of criminal activity." *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). Indeed, a warrantless arrest "does not violate the Fourth Amendment if the officers had probable cause to believe [the plaintiff] had committed *or was about to commit a crime*." *Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998) (emphasis added). Defendant police officers bear the burden of producing evidence to show that there was probable cause to arrest, but the plaintiff has the ultimate burden of proof. *Dubner v. City of San Francisco*, 266 F.3d 959, 965 (2001).

7

Briley's claim for false arrest hinges on what happened before the video shows him engaged in a struggle with the police officers. Plaintiff Briley has testified that around that time, after Wareberg was taken away, "someone from the crowd, I'm assuming one of Gallagher's friends, gets in my face and starts saying something which I can't remember." (Responses ¶ 29; Briley Deposition 125:3-6.) Briley testified that he does not recall exactly what the individual said, but he thinks "he was cussing in some sort of manner, you know, saying 'F you,' this sort of stuff and he pushes me." (Responses ¶ 29; Briley Deposition 126:14-16.) Thomas has testified that a "guy came up into [Briley's] face and I think he actually pushed him. And they looked like they were possibly about to fight." (Harrell Declaration, Exhibit P ("Thomas Testimony") 200:8-18; *see also* Thomas Deposition 276:5-8.)

Briley testified that after being pushed he was "pissed off," so he walked toward the individual and asked, "why the hell did you do that?" (Responses ¶ 30.) Thomas has testified that Briley was "toe to toe" with the other individual. (Responses ¶ 31.) Thomas testified that he then saw Officer Phillips "come from the background kind of behind [Briley] and sort of leaped onto his back with both arms around him." (Responses ¶ 32; Thomas Testimony 201:2-4.)

Plaintiffs do not meaningfully dispute any of these facts. Although Plaintiffs claim that some of these facts are "disputed," Plaintiffs do not put forth any evidence to support their claim of a dispute. (Responses ¶¶ 29, 32.) The "disputes" consist mostly of the Plaintiff's statement that Exhibit Q to the Harrell Declaration, cited by Defendants, does not contain the testimony claimed. (Responses ¶¶ 31-32.) This is clearly the result of a clerical error. Exhibit P to the Harrell Declaration contains all the relevant testimony.

Further, all the proffered facts are based on testimony by the Plaintiffs. Thus, Plaintiffs cannot seek to contradict it with more of their own testimony. "A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts." *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001). Thus, the recitation of facts pertaining to Briley's actions off-camera is undisputed.

8

1    Based on these facts, no reasonable jury could conclude that Officer Phillips did not have
2 probable cause to arrest Briley. Officer Phillips had been present when Officer Sibbald arrested
3 Wareberg for fighting, when a group of people "all looked like they wanted to fight."
4 (Responses ¶ 11; Video 2:38:00; Plaintiffs' Exhibit F.) He then saw one man push another, and
5 saw the second man step close to the first, "pissed off," stating "why the hell did you do that?"
6 (Responses ¶ 30). He witnessed what Plaintiff Thomas characterized as two people looking
7 "like they were possibly about to fight." (Thomas Testimony 200:8-18.) Under these
8 circumstances, there was sufficient evidence to warrant a prudent person's belief that Plaintiff
9 Briley was about to violate California Penal Code § 415(1) by fighting or threatening to fight.
10 Thus, the arrest did not constitute a violation of Plaintiff Briley's civil rights, and the Court need
11 not reach the second and third inquiries of the qualified immunity standard. The Motion is
12 GRANTED as to Plaintiff Briley's claims for relief under 42 U.S.C. § 1983 for "False Arrest"
13 against all Defendants.

### 2.2    Briley's Claim for Excessive Force in Violation of his Federal Civil Rights

Briley also claims that the force used against him by the police officers effecting his arrest was excessive. We examine the use of force to effect an arrest under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Force used during an arrest "must be balanced against the need for that force." *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) (quoting *Liston v. County of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997). This balancing involves weighing the extent of the force used against the circumstances, including: (1) The severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; (3) whether he was actively resisting arrest or attempting to evade arrest by flight; and (4) any other exigent circumstances. *Deorle*, 272 F.3d at 1280. "The reasonableness of a particular use of force must be judged from

1 the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of
2 hindsight." *Graham*, 490 U.S. at 396. "Whether the amount of force used was reasonable is
3 usually a question of fact to be determined by the jury." *Barlow v. Ground*, 943 F.2d 1132, 1134
4 (9th Cir. 1991).

### 2.2.1   The Police Officers' Initial Contact with Briley

The first alleged use of force against Briley is not caught on video. That use of force is the initial contact between Officer Phillips and Briley that results in the struggle shown on the video. That initial contact, according to Briley, consisted of Officer Phillips, without warning, jumping on his back as if "he wanted to attack" Briley. (Briley Deposition 131:20-132:13.) This occurred after Officer Phillips saw Briley face to face with an individual who had pushed him. Officer Phillips' jump caused Briley's head to get knocked to the side, caused Briley to bend over, and caused Officer Phillips to slide off of Briley's body. (Briley Deposition 134:19-135:7.)

According to witness Eric Coleman, Officer Phillips said, "Get back," before trying to "grab" Briley. (Coleman Deposition 53:12-17.) Then, Officer Phillips "went to grab him and he got away, at which point the officer, like, tried to – he tried to go for an arm grab and then went for kind of an over-the-top grab." (*Id.* at 54:1-4.) According to Plaintiff Thomas, Officer Phillips said nothing to Briley before jumping on his back with both arms around him. (Thomas Deposition 287:1-19; Thomas Testimony 201:2-5.) The end of this interaction, and the rest of the acts complained of, are shown on the video.

At this summary judgment stage, the Court must determine whether, even viewing the evidence in the light most favorable to the Plaintiffs, any reasonable jury could conclude in the Plaintiffs' favor. Thus, the Court accepts the allegations that Officer Phillips jumped on Briley's back without warning. The Court considers whether this use of force was excessive in light of the circumstances.

The circumstances surrounding the officers, as shown on the video, were hectic. The

officers were surrounded by a large crowd of shouting people and had just arrested Wareberg, not a party to this action, who had looked like he was about to engage in a fight. Nearly immediately afterwards, Briley, from the same group as Wareberg, was "toe-to-toe" with an individual who had just pushed him, looking like he was about to fight. Allowing a fight to develop would be a threat to the safety of Briley and the people around him. In those circumstances, it was reasonable for Officer Phillips to want to separate the potential fighters. Given the loudness of the crowd and the potential danger to the officer of stepping between two potentially violent men, it was reasonable for Officer Phillips to approach from behind and try to restrain one of the potential fighters. It was understandable, given the "tense, uncertain, and rapidly evolving" nature of the circumstances, for the officer to want to act quickly and decisively before anyone was hurt. *Graham*, 490 U.S. at 397. Still, a reasonable jury could find that it was not objectively reasonable for Officer Phillips to jump on Briley's back without warning.

Assuming, then, that Briley's Fourth Amendment rights were violated, the Court must now turn to the two steps of the qualified immunity analysis. First, the Court must evaluate, in light of the specific context of the case, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the Court must evaluate whether a reasonable officer could have believed the conduct in question to be lawful. *Hunter*, 502 U.S. at 229 (1991).

The first inquiry must be fact specific. A general finding that excessive force is contrary to the Fourth Amendment is not enough. *Saucier*, 533 U.S. at 201. Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Plaintiff cites no case law demonstrating a clearly established rule prohibiting Officer Phillips from jumping on Briley's back in these circumstances. Instead, Plaintiff cites *Deorle*, 272 F.3d at 1285-86, for the proposition that, even if there is no direct precedent, a law may be

11

clearly established.  In *Deorle*, a police officer, without warning, fired a "beanbag round" into Deorle's face, "although Deorle was unarmed, had not attacked or even touched anyone, had generally obeyed the instructions given him by various police officers, and had not committed any serious offense." *Id.* at 1275.  The shot removed Deorle's eye and left lead shot implanted in his skull.  *Id.*  The court held that where a police officers's conduct is egregious and "patently violative" of a constitutional right, then closely analogous pre-existing case law is not required. *Id.* (quoting Mendoza v. Block, 27 F.3d 1357, 1361 (9th Cir. 1994)).  This is not such a case. Officer Phillips is entitled to qualified immunity in jumping on Briley's back.

### 2.2.2   The Police Officers' Subsequent Struggle with Briley

The Court next determines whether the police officers employed excessive force with Briley in the events shown on the video, from immediately after Officer Phillips jumped on his back to the arrival of the police cars.  A significant factor in whether the force used by the police officers was unreasonable is whether Briley was resisting arrest.  *Deorle*, 272 F.3d at 1280; *see Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001) (holding that force applied in handcuffing a sixty-year-old woman was justified, since she "stiffened her arm and attempted to pull free" when officers tried to handcuff her).  The Supreme Court has stated that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Id.* (internal quotations omitted).

Even viewing the video in the light most favorable to Briley, it is clear that he resists being held by the officers, while his friend, Plaintiff Thomas, shouts at him to "Kick it!"  The phrase "kick it," to Plaintiff Thomas, means to "relax."  (Thomas Testimony 204:27-28.)  This view of the video is confirmed by testimony.  According to Thomas, Briley "pushed the police officer off." (Thomas Testimony 204:5-6.)  According to Plaintiffs' witness Eric Coleman,

Briley was "trying to elude or trying to not get grabbed," and he "got out from underneath [Officer Phillips's] headlock." (Coleman Deposition 54:11-12, 55:12-13.) Briley has testified that he "was resisting being thrown to the ground." (Harrell Declaration, Exhibit P ("Briley Testimony") 363:24.) After some effort, the police officers managed to bring Briley to the ground. Even then, Briley continues, by his own admission, to resist. He has testified that he "was resisting [his] right arm being moved to [his] back to be handcuffed." (Briley Deposition 161:15-18.) Finally, when forced to the ground by police officers, Briley stands up twice.

The video also makes clear that Briley was aware that the people he was struggling with were police officers. The police officers were uniformed and surrounding him. At many points in the video, Briley is face to face with an officer, or looking directly at a uniform.

From the video, it appears that the police officers are doing all that they can to protect themselves and others in a potentially dangerous situation with a resisting suspect. Still, a reasonable jury could find that some of Officer Sibbald's actions fall outside the range of objectively reasonable conduct. Thus, this court turns to the first qualified immunity inquiry.

Again, Plaintiff cites no specific case law providing a clearly established rule against the officer's behavior in this situation. Again, the officer's behavior was not "patently violative" of a constitutional right. Officer Sibbald in this situation were neither "plainly incompetent" nor did he "knowingly violate the law." *Hunter*, 502 U.S. at 229. Further, Plaintiff has not alleged that he suffered any injury besides scrapes and cuts. *See Saucier*, 533 U.S. at 209 (confirming conclusion of qualified immunity in excessive force claim because respondent did not suffer hurt or injury). Thus, Officer Sibbald is entitled to qualified immunity for his treatment of Briley during his arrest.

### 2.2.3   Conclusion

The Motion is GRANTED as to Plaintiff Briley's claims for relief under 42 U.S.C. § 1983 for "Excessive Force" against all Defendants.

### 3. PLAINTIFF THOMAS'S CLAIMS

#### 3.1 Thomas's Claim for False Arrest in Violation of his Federal Civil Rights

Plaintiff Thomas also claims that he suffered a false arrest. The Hermosa Beach Defendants move for summary judgment, arguing that the officers had probable cause to arrest him under California Penal Code § 148(a)(1). That section states that "[e]very person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment," is punishable by fine or imprisonment. The elements of § 148(a)(1) are: (1) the suspect willfully resisted, delayed, or obstructed a peace officer; (2) when the officer was engaged in the lawful performance of his or her duties; and (3) the suspect knew or reasonably should have known that the other person was a police officer engaged in the performance of his or her duties. *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005).

The video indisputably shows that Plaintiff Thomas enters the perimeter created by the officers. The officers had created the perimeter by pushing people and telling them to "stay away." Thomas states that Sergeant Cook touched him "a number of times" to push him back. (Thomas Deposition 365:15-19.) Despite Sergeant Cook's apparent desire to keep him back, Thomas then places his hand on Sergeant Cook while attempting to get close to Briley. (Responses ¶ 38.) This causes Sergeant Cook to turn her attention away from Briley's arrest. Sergeant Cook tells Thomas to "get out of here," and tries to push him away from the struggle between Briley and the officers. Nevertheless, Thomas continues to try to move towards Briley, forcing her to continue to interact with him. Even viewed in the light most favorable to the Plaintiffs, this behavior constituted resistance to Sergeant Cook's lawful efforts to aid in and monitor the arrest of Briley and to maintain a safe area around the struggle.

1  This Court agrees with the judge who presided over Thomas's probation violation
2 hearing: "It was reasonable for her to want to keep Mr. Thomas back. So I find that his actions
3 were a violation of Penal Code § 148(a)(1) in obstructing her ability to keep the officer safe, to
4 keep the crowd controlled." (Plaintiffs' Exhibit AB 48:3-8.) *See Smith*, 394 F.3d at 696-97
5 (finding multiple violations of § 148(a)(1) when suspect twice refused to take his hands out of
6 his pockets, reentered his home once, and repeatedly refused to put his hands on his head); *In re*
7 *Muhammed C.*, 95 Cal.App.4th 1325, 1330 (2002) (finding a § 148(a)(1) violation when
8 Muhammed repeatedly refused to step away from a patrol car, forcing police officers to stop
9 what they were doing and approach him). Thus, Sergeant Cook had probable cause to arrest
10 Thomas.
11  Plaintiffs argue that there was no probable cause to arrest Thomas because his "persistent
12 efforts to assist Briley from the brutality Briley was being subjected to by Phillips and Sibbald is
13 privileged." (Opposition 18:17-19 (citing *People v. Soto*, 276 Cal.App.2d 81, 85 (1969) ("[A]
14 person who uses reasonable force to protect himself or others against the use of unreasonable
15 excessive force in making an arrest is not guilty of any crime.").) Even if the Court assumes that
16 Thomas was approaching Briley and the officers to protect Briley from excessive force and not
17 to tell him to calm down, this argument fails. The force used against Briley at the time Thomas
18 was interfering with Officer Cook was reasonable. *See Arpin*, 261 F.3d at 921 ( "An
19 individual's limited right to offer reasonable resistance is only triggered by an officer's bad faith
20 or provocative conduct."). The Motion is GRANTED as to Plaintiff Thomas's claims for relief
21 under 42 U.S.C. § 1983 for "False Arrest" against all Defendants.

23  **3.2   Thomas's Claim for Excessive Force in Violation of his Federal Civil**
24       **Rights**

26  Thomas, like Briley, claims that the officers used excessive force against him. Thomas
27 specifically claims excessive force against: (1) Sergeant Cook for wrenching his finger, striking

1 him in the head once, and participating in his take down; (2) against Officer Phillips for using a
2 "carotid control hold" on him; and (3) against Officer Sibbald for kicking him in the head as he
3 lay handcuffed on the pavement.

### 3.2.1   Thomas's Excessive Force Claims Against Sergeant Cook

Plaintiff Thomas claims that, while creating a perimeter around Wareberg and the officers, Sergeant Cook grabbed and twisted his finger, causing a spiral fracture. (Harrell Declaration, Exhibit Q ("Thomas Interrogatory") 5:6-8.) He has not produced any medical reports to support his claimed injury. Thomas then claims that Sergeant Cook unreasonably struck him in the face while trying to keep him away from Briley and the other officers. Finally, he claims that she "assisted Officer Phillips in contorting [his] body by holding [his] legs while Phillips dragged [him] along the ground by [his] head." (Thomas Interrogatory 5:6-8.)

From viewing the video, the Court finds, as a matter of law, that Sergeant Cook did not employ excessive force in dealing with and arresting Thomas. First, Thomas's claimed injury unsupported by medical records is insufficient to establish excessive force. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001). Second, it was reasonable for Sergeant Cook to employ pain compliance techniques to create a perimeter around struggling officers. *See Forrester v. City of San Diego*, 25 F.3d 804, 806-07 (9th Cir. 1994) (finding the use of pain compliance techniques on nonresisting abortion protestors, that resulted in complaints of bruises, a pinched nerve, and a broken wrist, was objectively reasonable). Third, it is clearly apparent from the video that Sergeant Cook's efforts to control Thomas were reasonable. She continually applied close to the minimal force required to keep him away from the other officers. When she decided to arrest and handcuff Thomas, her use of force was minimal enough that he was able to move away from her repeatedly. He was even able to stand back up when she decided to take him down. Finally, her holding on to his legs while Officer Phillips chose to take him down was not excessive force. The Motion is GRANTED as to

Plaintiff Thomas's claim for relief under 42 U.S.C. § 1983 for "Excessive Force" against Sergeant Cook.

### 3.2.2 Thomas's Excessive Force Claim Against Officer Phillips

Thomas claims that Officer Phillips used a "carotid control hold" on Thomas, and continued to use it after Thomas had been brought to the ground. Thomas argues that that use of force was excessive. The Court finds that reasonable jury could determine that Officer Phillips used a carotid control hold, and that the use of that hold was excessive in the circumstances.

Turning to the first qualified immunity standard, the Plaintiffs have again cited no specifically relevant case law showing a clearly established rule against the officer's conduct. Accordingly, a reasonable officer could have believed that his conduct was lawful. *See City of Los Angeles v. Heller*, 475 U.S. 796, 797 (1986) (citing jury verdict that found that attempted use of carotid control hold on person under suspicion of driving while intoxicated was not unreasonable). The Motion is GRANTED as to Plaintiff Thomas's claim for relief under 42 U.S.C. § 1983 for "Excessive Force" against Officer Phillips.

### 3.2.3 Thomas's Excessive Force Claim Against Officer Sibbald

Plaintiff Thomas asserts that Officer Sibbald kicked him in the head as he lay handcuffed on the pavement. (Responses ¶ 95.) There is some dispute about what the video shows concerning the kick. (Video 5:20:08.) For this summary judgment motion, then, because Plaintiffs' version of the facts is not "blatantly contradicted" by the video, the Court assumes that Officer Sibbald kicked Thomas in the head. *Scott*, 127 S.Ct. at 1774-1776. Still, the video makes clear that the kick, if it occurred, was a glancing blow, was not to the face, and was not of sufficient force to cause any injury.

In *Saman v. Robbins*, 173 F.3d 1150 (9th Cir. 1999), the Ninth Circuit determined that a

17

single kick to the head of a suspect was objectively reasonable. The circumstances surrounding that kick were very different from the circumstances surrounding the kick here. In that case, "a police officer had been shot and wounded and was engaged in a gun battle." *Id.* at 1156. The other officer "was informed that there was more than one suspect, and he knew that at least one of the suspects was armed." *Id.* He came upon a suspect who began to comply with his commands to get down on the ground, but then suddenly jumped to his feet. *Id.* In the context of a potentially armed and dangerous suspect, the Ninth Circuit found it reasonable for the officer to kick him once to subdue him.

Here, both Briley and Thomas had already been subdued, and multiple officers were on the scene. There was no reasonable basis for Officer Sibbald to kick Thomas in the head after he was subdued. Thus, when the facts are viewed in the light most favorable to Plaintiffs, Thomas's Fourth Amendment rights were violated.

The Court now turns to the qualified immunity analysis. Yet again, Plaintiffs cite no specific case law showing that the police officer's actions in the hectic circumstances that surrounded him were illegal. A reasonable officer, making split second decisions, could have believed that what Officer Sibbald did was legal, in order to make sure that Thomas remained subdued and to demonstrate to the shouting crowd that the police officers would not tolerate danger to themselves or others. Keeping in mind the Supreme Court mandate that qualified immunity questions be resolved "at the earliest stage possible in litigation," this Court determines that Officer Sibbald is entitled to qualified immunity in this situation. *Hunter*, 502 U.S. at 227. Accordingly, the Motion is GRANTED as to Plaintiff Thomas's claim for relief under 42 U.S.C. § 1983 for "Excessive Force" against Officer Sibbald.

**DISPOSITION**

    Defendants' Motion is GRANTED.

IT IS SO ORDERED.

DATED: September 29, 2008

                                                    _____
                                                         Andrew J. Guilford
                                                     United States District Judge