**"O"**

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BRILEY, JUSTIN THOMAS, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF HERMOSA BEACH, CHIEF MICHAEL LAVIN, JONATHAN SIBBALD, LANDON PHILLIPS, SGT. NANCY COOK, AND DOES 1-10, INCLUSIVE, <br><br> Defendants. | CASE NO. CV 05-8127 AG (SHx) <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION OF PLAINTIFFS' STATE LAW CLAIMS |

This case deals with the claims of two individuals who were arrested after a short struggle at the Hermosa Beach Pier Plaza on the Fourth of July. Before the Court is the Motion of the Defendants, City of Hermosa Beach, Chief Michael Lavin, Jonathon Sibbald, Landon Phillips, and Sgt. Nancy Cook ("Hermosa Beach Defendants") for Summary Adjudication of Plaintiffs' State Law Claims. After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court GRANTS in part and DENIES in part the Motion.

**BACKGROUND**

The facts of this case are set forth in this Court's order dealing with Defendants' Motion for Summary Judgment, or in the Alternative Summary Adjudication of Plaintiffs' "False Arrest" and "Excessive Force" Claims ("False Arrest Order"). The Court restates them here.

On the afternoon of July 4, 2003, Plaintiffs Christopher Briley and Justin Thomas went to the crowded Hermosa Beach Pier Plaza area with a group of friends. (Plaintiffs' Responses to Defendants' Statements of Uncontroverted Facts and Conclusions of Law in Opposition of Motion for Summary Judgment, or in the Alternative Summary Adjudication of Plaintiffs' "False Arrest" and "Excessive Force" Claims ("Responses") ¶ 3.) They walked along the Strand, which is a pedestrian walkway bordering the beach. (*Id.* ¶ 4.) During their walk, one member of the group, Randy Wareberg, encountered a man named Shaun Gallagher. The two men began to have an argument. (*Id.* ¶¶ 4-5.) Their interaction caused Hermosa Beach Police Officer Jonathan Sibbald to separate them and to order them to leave the beach. (*Id.* ¶ 6-7.)

Wareberg, Briley, and Thomas continued to walk along the Strand approximately two blocks until they reached the Pier Plaza. (*Id.* ¶ 8; Thomas Deposition 151:9.) Once there, in a crowded area, Wareberg again encountered Gallagher. (Responses ¶ 8.) The interaction on the Pier Plaza between Wareberg and Gallagher and the subsequent events is recorded on a video filmed by local college students. (Harrell Declaration, Exhibit A ("Video").) The following recitation of facts is drawn from facts agreed upon by the parties and from the Court's independent viewing of the video. The Court describes portions of the video that are indisputable. *See Scott v. Harris*, 127 S.Ct. 1769, 1774-1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by [a video], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

The video undisputedly shows Wareberg and Gallagher gesturing, speaking, and posturing as if to fight, while other civilians try to separate them. (Responses ¶¶ 9-10; Video

1  2:11:00-2:32:20.)  Plaintiff Thomas testified that the interaction escalated into a "group thing"
2  between Plaintiffs' group and Gallagher's friends, and that "they all looked like they wanted to
3  fight."  (Responses ¶ 11.)  Officer Sibbald then approaches Wareberg, grabs him by the throat
4  with his left hand, and pushes him back approximately five steps before taking him to the
5  ground.  (Responses ¶ 12; Video 2:32:29-2:37:06.)  Officer Sibbald holds Wareberg in a seated
6  position on the ground and handcuffs his hands behind his back.  (Responses ¶ 13; Video
7  2:47:28-3:02:22.)  At this point, other uniformed officers appear on the scene, and they create a
8  perimeter around Officer Sibbald and Wareberg, forcing the shouting crowd of hundreds of
9  people to move outside of it.  (Responses ¶¶ 14-17; Video 2:38:00-2:46:00.)  The officers push
10 people who do not honor the perimeter, which is approximately thirty feet in diameter.  (Video
11 2:38:00-2:46:00.)  Sergeant Cook is seen to wrench the finger of Plaintiff Thomas, who was
12 standing inside the perimeter, while telling him to "Back up!"  (Responses ¶¶ 20, 22; Video
13 2:40:17-2:42:00.)

14        At this point, the video cuts away from the action at what appears to be a pivotal moment.
15 When the camera swings back to the action, Plaintiff Briley is seen in an altercation with three
16 police officers.  (Video 3:21:00-3:26:00.)  They attempt to restrain him, one from the front, one
17 from the back, and one from the side, and he tries to keep them away.  (*Id.*)  He spreads his arms
18 and shouts, "I ain't doing shit!" before being taken to the ground.  (Video 3:31:29.)  The officers
19 struggle to place his hands behind his back to handcuff him.  (Video 3:32:30-3:45:20.)

20        While Briley and the police officers are struggling, Plaintiff Thomas seems to be
21 misguidedly attempting to calm the situation.  He enters the perimeter, moves around Sergeant
22 Cook who is watching the struggle, approaches close to Briley and the officers, and repeatedly
23 shouts, "Briley, kick it!  Kick it!" (Video 3:24:20-3:26:00.)  Sergeant Cook then notices him,
24 puts her arm across his chest, says, "Get out of here," and pushes him back away from Briley
25 and the other officers.  (Responses ¶ 46; Video 3:25:00-3:28:00.)  Despite Sergeant Cook's
26 efforts, Thomas remains inside the perimeter and continues to attempt to move toward and shout
27 at Briley.  (Video 3:31:26-3:34:28.)  He testified that he wanted to stay, instead of leaving as
28

1 ordered, because "[s]omebody had to be there to witness what was going on." (Responses ¶ 48.)
2 Eventually, as Thomas continues to approach Briley and the officers, Sergeant Cook wraps her
3 arms around Thomas's waist, pulls him away from Briley and the officers, and takes him to the
4 ground. (Responses ¶ 55; Video 3:46:00-3:48:00.) With Sergeant Cook holding his waist,
5 Thomas pushes himself back into a standing position. (Responses ¶ 56; Video 3:48:06-3:50:10.)
6 He resists Sergeant Cook's continued efforts to take him back to the ground. (Video 3:51:00-
7 3:57:00.)

8      At this point, Officer Phillips grabs Thomas around the neck and pulls Thomas to the
9 ground as Sergeant Cook holds on to his legs. (Responses ¶ 62; Video 3:57:00-3:59:20.) With
10 two officers trying to keep him on the ground, Thomas again pushes off the ground and gets to
11 his knees. (Responses ¶ 63; Video 4:00:00-4:18:00.) Members of the crowd then throw loud,
12 exploding fireworks into the circle. (Responses ¶ 64; Video 4:10:00-4:35:00.) Next, Officer
13 Sibbald walks toward Sergeant Cook, Officer Phillips, and Thomas. (Responses ¶ 65; Video
14 4:21:00.) As Officer Sibbald reaches the struggling group, he turns around and looks in the
15 direction he came from. (Video 4:24:18.) He says, "Hey!" and runs back to Briley, who is
16 standing with his hands handcuffed behind his back. (Video 4:25:11-4:27:00.) Briley was last
17 shown on the ground forty-one seconds before. (Video 3:46:00.) Officer Sibbald, reaching
18 Briley, puts his arm around his throat and takes him to the ground. (Video 4:27:00-4:26:10.)
19 Officer Sibbald then leaves Briley on the ground and walks back toward Sergeant Cook, Officer
20 Phillips, and Thomas. (Responses ¶ 69; Video 4:28:28.) Briley then stands back up and steps
21 toward Officer Sibbald. (Responses ¶ 69; Video 4:30:00-4:32:00.) Officer Sibbald, seeing
22 Briley standing again, grabs him and forces him to the ground for a third time. (Responses ¶¶ 71,
23 91; Video 4:34:00-4:45:00.) Sibbald holds Briley on the ground with his knee on his chest until
24 other officers arrive on the scene. (Responses ¶ 71; Video 4:34:00-4:45:00.)

25      Ultimately, both Plaintiffs were taken to the Hermosa Beach Jail where they were booked
26 and cited. On July 19, 2003, a criminal complaint was filed against the Plaintiffs, charging them
27 each with violations of Penal Code § 148(a)(1) (interfering with a peace officer). (Opposition
28

10:22-24.) The complaint was later amended, adding a charge of battery and a charge of violation of California Penal Code § 415(1) (fighting or threatening to fight in a public place) against Briley. (*Id.* at 10:24-11:1.) At a jury trial in December 2006, Briley was acquitted of the two later-added charges. On April 3, 2007, the deputy city prosecutor dismissed the § 148(a)(1) charges against both Plaintiffs. On November 15, 2007, the Plaintiffs brought a complaint against the Hermosa Beach Defendants for multiple alleged wrongs, including claims for relief under California Law for Assault and Battery, False Arrest, Intentional Infliction of Emotional Distress, Negligence, and Violation of the California Civil Rights Act. The Hermosa Beach Defendants move for summary judgment of these claims.

**LEGAL STANDARD**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *See id.* at 322-23. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

**ANALYSIS**

**1.     ASSAULT AND BATTERY**

According to California law, claims for assault and battery against peace officers should be resolved under the same liability standard as 42 U.S.C. § 1983 excessive force causes of action. *See Saman v. Robbins*, 173 F.3d 1150, 1156 n.6 (9th Cir. 1999) (applying the same standard for excessive force for both federal and California law), *Susag v. Lake Forest*, 94 Cal. App. 4th 1401 (2002) (adopting federal § 1983 standards for resolution of state law tort claims against peace officers), *Edson v. Anaheim*, 63 Cal.App.4th 1269, 1274 (1998) (same). Thus, if a court finds that police officers did not use excessive force against a plaintiff under federal law, it should also find no assault and battery under state law. Alternatively, if a court finds that police officers did use excessive force against a plaintiff under federal law, it should find assault and battery under state law.

In this case, the Court has found that a jury could decide that some of the actions by the Police Officer Defendants during the arrest of Plaintiffs Briley and Thomas did constitute excessive force. (*See* False Arrest Order.) The Court held that a jury could find excessive force in: (1) Officer Phillips's alleged jumping on Plaintiff Briley's back without warning; (2) Officer Sibbald's treatment of Briley during the his arrest; (3) Officer Phillips alleged use of a carotid control hold on Plaintiff Thomas; and (4) Officer Sibbald's alleged kicking of Thomas in the head. Still, the Court granted the Motion For Summary Adjudication of Plaintiffs' federal law excessive force claims on the basis of qualified immunity.

The doctrine of qualified immunity is a federal doctrine that does not extend to state tort claims against government employees. *Ogborn v. City of Lancaster*, 101 Cal. App. 4th 448, 460 (2002) (citing *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 755-756 (1997)). Thus, the Plaintiffs' state law claims for excessive force cannot be dismissed merely because the federal

law claims were dismissed. To the contrary, Plaintiffs' remaining state law claims for assault and battery must be analyzed independently.

Defendants claim that California law has a doctrine equivalent to federal qualified immunity, and that the Defendant Police Officers in this case are also immune from suit under California state law. Defendants contend that California Government Code § 820.4 codifies California's "qualified immunity" standard. The Court disagrees.

California Government Code § 820.4 states that "[a] public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law." Defendants argue that "due care" is a standard more relaxed than the excessive force "objective reasonableness" standard. Defendants then cite cases that do not support their position. For example, *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269 (1998) discusses that the "objective reasonableness" standard for excessive force under federal law and for assault and battery under state law should be the same, as stated above. It does not mention the qualified immunity standard or the "due care" standard of § 820.4. Indeed, Defendants cite no cases applying § 820.4 or mentioning its relevance to qualified immunity analysis. Accordingly, summary adjudication is not granted on this basis.

Defendants' Motion as to Plaintiffs' state law assault and battery claims is GRANTED in part and DENIED in part, according to the False Arrest Order's determination of what actions did and did not arguably constitute excessive force. The Motion is GRANTED as to Chief Lavin and Sergeant Cook, because the False Arrest Order found that they had not violated any constitutional rights. It is DENIED as to Officers Phillips and Sibbald, because the False Arrest Order found that a jury could determine that they used excessive force.

### 2. FALSE ARREST

In its False Arrest Order, this Court disposed of the Plaintiffs' federal false arrest claims on the grounds that the police officers had probable cause to arrest the Plaintiffs. Under federal

7

law, the existence of probable cause to arrest bars an action by an arrestee against a police officer. The standard is the same under California state law. California Penal Code § 847; *Roberts v. City of Los Angeles*, 109 Cal. App. 3d 625, 629 (1980) (Existence of probable cause bars action for false arrest.). Also, the standards in state and federal court for probable cause are the same. *People v. Memro*, 11 Cal. 4th 786, 843 (1995) ("[T]he standards are identical."). Accordingly, the police officers had probable cause under California law to arrest the Plaintiffs. The Motion is GRANTED as to Plaintiffs' state law claims for false arrest.

### 3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under California law, the elements of liability for intentional infliction of emotional distress ("IIED") are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).

Defendants argue that this claim is "without merit to the extent that it purports to incorporate Plaintiffs' 'False Arrest' and 'Assault and Battery' claims." (Motion 2:11-20.) The Court agrees. Although the Defendant Police Officers may be liable for their use of excessive force, no reasonable jury could determine that their conduct satisfied the "extreme and outrageous" standard required by the first element of IIED. As the Court found in its False Arrest Order, the Defendants in this case were presented with a difficult situation and split-second decisions. In some moments, they may have crossed the line of excessive force, but their actions were never beyond those that a reasonable officer could have considered lawful. Under this analysis, the Court finds that the Police Officer Defendants' conduct was not "extreme and outrageous." The Motion is GRANTED as to Plaintiffs' IIED claims.

### 4. NEGLIGENCE

Defendants' Motion states that Plaintiffs' negligence claim "is without merit to the extent that it purports to incorporate Plaintiffs' 'False Arrest' and 'Assault and Battery' claims. (Motion 2:21-24.)  The Court agrees as to the false arrest claims, but not as to the assault and battery claims.

Defendants' Motion does not specifically address negligence.  It merely states that "Plaintiffs' state law assertions . . . fail along with Plaintiffs' defective federal 'civil rights' allegations."  But this Court did not determine that the Plaintiffs' federal civil rights claims failed outright.  To the contrary, this Court's False Arrest Order concluded that a jury could find that the Police Officer Defendants did violate the Plaintiffs' constitutional rights to be free from excessive force.  Accordingly, without more argument from Defendants, the Motion is DENIED to the extent that this claim incorporates Plaintiffs' excessive force claims, and GRANTED to the extent that this claim incorporates Plaintiffs' false arrest claims.

### 5. VIOLATION OF CALIFORNIA CIVIL RIGHTS ACT

Plaintiffs allege that their arrest and treatment at the hands of the Defendants violated their civil rights and thereby violated California Civil Code § 52.1(a)-(b).  That code provides that "any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with" "by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion" may bring a civil action for damages.  Plaintiffs claim violations of California Civil Code § 52.1(a)-(b) for violations of rights guaranteed under both the federal and California constitutions.

Defendants move for summary adjudication of this claim, arguing that it is "without merit to the extent that it purports to incorporate Plaintiffs' 'False Arrest' and 'Assault and Battery'

claims." (Motion 2:25-28.) Defendants argue that "Plaintiffs' Sections 52 and 52.1 claims are functionally identical to Plaintiffs' Section 1983 'False Arrest and 'Excessive Force' allegations." (Motion 6:12-14.) Defendants argue that because the claims arise from the same facts, and the Court dismissed the claims under the federal constitution, the Court should dismiss the claims under § 52.1 as well. The Court agrees only in part.

First, the Court agrees that Plaintiffs' § 52.1 claim cannot survive to the extent that it is based on Plaintiffs' false arrest claim under the federal constitution. The Court has concluded that no false arrest occurred, because the Defendant Police Officers had probable cause to arrest the Defendants. Accordingly, the Motion is GRANTED to the extent that Plaintiffs' § 52.1 claim incorporates Plaintiffs' false arrest claims.

On the other hand, the Court granted the Motion for Summary Adjudication of Plaintiffs' Excessive Force Claims only on the basis of qualified immunity. The Court concluded that a reasonable jury could find that the Defendant Police Officers used excessive force. The Court then found that the doctrine of qualified immunity made the Defendant Police Officers immune to suit under the federal Constitution. Thus, the Court can only grant this Motion as to excessive force if qualified immunity applies in the state law context of § 52.1, as it does in the federal context.

Defendants' argument that qualified immunity applies in the § 52.1 context can be divided into two parts. First, Defendants argue that qualified immunity applies to claims under § 52.1 that are based on the federal Constitution. Defendants argue that the state, by enacting § 52.1, would not want to grant relief under the federal constitution that is specifically denied by federal law. Plaintiffs conceded this point in oral argument, and it is correct. *See Autry v. City & County of San Francisco*, 2006 U.S. Dist. LEXIS 17128 *20-21 (Feb. 13, 2006) (granting summary judgment on a § 52.1 claim because qualified immunity protects defendant "with respect to state law claims that are based on identical constitutional claims"). Thus, qualified immunity bars Plaintiffs' claims under § 52.1 to the extent that the claims are based on Plaintiffs' excessive force claims.

10

1  Second, Defendants argue that qualified immunity also applies to claims arising under
2  California law and the California Constitution, when the claims are based on the same facts as
3  those alleged under federal law. Defendants have cited no compelling authority for this
4  interpretation of California law. Accordingly, to the extent that Plaintiffs' claims are based on
5  violations of California law and the California Constitution, the Motion is DENIED.
6  The Motion is GRANTED to the extent that this claim is based on Plaintiffs' federal
7  excessive force and false arrest claims.

**DISPOSITION**

Defendants' Motion is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED: September 29, 2008

_____

Andrew J. Guilford

United States District Judge