

**"O"**

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CHRISTOPHER BRILEY, JUSTIN THOMAS,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CITY OF HERMOSA BEACH, CHIEF MICHAEL LAVIN, JONATHAN SIBBALD, LANDON PHILLIPS, SGT. NANCY COOK, AND DOES 1-10, INCLUSIVE,**<br><br>**Defendants.** | **CASE NO. CV 05-8127 AG (SHx)**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION OF PLAINTIFFS' *MONELL* CLAIMS** |

This case deals with the claims of two individuals who were arrested after a short struggle at the Hermosa Beach Pier Plaza on the Fourth of July. Before the Court is the Motion of the Defendants, City of Hermosa Beach, Chief Michael Lavin, Jonathon Sibbald, Landon Phillips, and Sgt. Nancy Cook ("Hermosa Beach Defendants") for Summary Adjudication of Plaintiffs' Municipal Liability Claim for Relief Under *Monell*. After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court GRANTS in part and DENIES in part the Motion.

**BACKGROUND**

The facts of this case are set forth in this Court's order dealing with Defendants' Motion for Summary Judgment, or in the Alternative Summary Adjudication of Plaintiffs' "False Arrest" and "Excessive Force" Claims ("False Arrest Order"). The Court restates them here.

On the afternoon of July 4, 2003, Plaintiffs Christopher Briley and Justin Thomas went to the crowded Hermosa Beach Pier Plaza area with a group of friends. (Plaintiffs' Responses to Defendants' Statements of Uncontroverted Facts and Conclusions of Law in Opposition of Motion for Summary Judgment, or in the Alternative Summary Adjudication of Plaintiffs' "False Arrest" and "Excessive Force" Claims ("Responses") ¶ 3.) They walked along the Strand, which is a pedestrian walkway bordering the beach. (*Id.* ¶ 4.) During their walk, one member of the group, Randy Wareberg, encountered a man named Shaun Gallagher. The two men began to have an argument. (*Id.* ¶¶ 4-5.) Their interaction caused Hermosa Beach Police Officer Jonathan Sibbald to separate them and to order them to leave the beach. (*Id.* ¶ 6-7.)

Wareberg, Briley, and Thomas continued to walk along the Strand approximately two blocks until they reached the Pier Plaza. (*Id.* ¶ 8; Thomas Deposition 151:9.) Once there, in a crowded area, Wareberg again encountered Gallagher. (Responses ¶ 8.) The interaction on the Pier Plaza between Wareberg and Gallagher and the subsequent events is recorded on a video filmed by local college students. (Harrell Declaration, Exhibit A ("Video").) The following recitation of facts is drawn from facts agreed upon by the parties and from the Court's independent viewing of the video. The Court describes portions of the video that are indisputable. *See Scott v. Harris*, 127 S.Ct. 1769, 1774-1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by [a video], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

The video undisputedly shows Wareberg and Gallagher gesturing, speaking, and posturing as if to fight, while other civilians try to separate them. (Responses ¶¶ 9-10; Video

2:11:00-2:32:20.) Plaintiff Thomas testified that the interaction escalated into a "group thing" between Plaintiffs' group and Gallagher's friends, and that "they all looked like they wanted to fight." (Responses ¶ 11.) Officer Sibbald then approaches Wareberg, grabs him by the throat with his left hand, and pushes him back approximately five steps before taking him to the ground. (Responses ¶ 12; Video 2:32:29-2:37:06.) Officer Sibbald holds Wareberg in a seated position on the ground and handcuffs his hands behind his back. (Responses ¶ 13; Video 2:47:28-3:02:22.) At this point, other uniformed officers appear on the scene, and they create a perimeter around Officer Sibbald and Wareberg, forcing the shouting crowd of hundreds of people to move outside of it. (Responses ¶¶ 14-17; Video 2:38:00-2:46:00.) The officers push people who do not honor the perimeter, which is approximately thirty feet in diameter. (Video 2:38:00-2:46:00.) Sergeant Cook is seen to wrench the finger of Plaintiff Thomas, who was standing inside the perimeter, while telling him to "Back up!" (Responses ¶¶ 20, 22; Video 2:40:17-2:42:00.)

At this point, the video cuts away from the action at what appears to be a pivotal moment. When the camera swings back to the action, Plaintiff Briley is seen in an altercation with three police officers. (Video 3:21:00-3:26:00.) They attempt to restrain him, one from the front, one from the back, and one from the side, and he tries to keep them away. (*Id.*) He spreads his arms and shouts, "I ain't doing shit!" before being taken to the ground. (Video 3:31:29.) The officers struggle to place his hands behind his back to handcuff him. (Video 3:32:30-3:45:20.)

While Briley and the police officers are struggling, Plaintiff Thomas seems to be misguidedly attempting to calm the situation. He enters the perimeter, moves around Sergeant Cook who is watching the struggle, approaches close to Briley and the officers, and repeatedly shouts, "Briley, kick it! Kick it!" (Video 3:24:20-3:26:00.) Sergeant Cook then notices him, puts her arm across his chest, says, "Get out of here," and pushes him back away from Briley and the other officers. (Responses ¶ 46; Video 3:25:00-3:28:00.) Despite Sergeant Cook's efforts, Thomas remains inside the perimeter and continues to attempt to move toward and shout at Briley. (Video 3:31:26-3:34:28.) He testified that he wanted to stay, instead of leaving as

ordered, because "[s]omebody had to be there to witness what was going on." (Responses ¶ 48.) Eventually, as Thomas continues to approach Briley and the officers, Sergeant Cook wraps her arms around Thomas's waist, pulls him away from Briley and the officers, and takes him to the ground. (Responses ¶ 55; Video 3:46:00-3:48:00.) With Sergeant Cook holding his waist, Thomas pushes himself back into a standing position. (Responses ¶ 56; Video 3:48:06-3:50:10.) He resists Sergeant Cook's continued efforts to take him back to the ground. (Video 3:51:00-3:57:00.)

At this point, Officer Phillips grabs Thomas around the neck and pulls Thomas to the ground as Sergeant Cook holds on to his legs. (Responses ¶ 62; Video 3:57:00-3:59:20.) With two officers trying to keep him on the ground, Thomas again pushes off the ground and gets to his knees. (Responses ¶ 63; Video 4:00:00-4:18:00.) Members of the crowd then throw loud, exploding fireworks into the circle. (Responses ¶ 64; Video 4:10:00-4:35:00.) Next, Officer Sibbald walks toward Sergeant Cook, Officer Phillips, and Thomas. (Responses ¶ 65; Video 4:21:00.) As Officer Sibbald reaches the struggling group, he turns around and looks in the direction he came from. (Video 4:24:18.) He says, "Hey!" and runs back to Briley, who is standing with his hands handcuffed behind his back. (Video 4:25:11-4:27:00.) Briley was last shown on the ground forty-one seconds before. (Video 3:46:00.) Officer Sibbald, reaching Briley, puts his arm around his throat and takes him to the ground. (Video 4:27:00-4:26:10.) Officer Sibbald then leaves Briley on the ground and walks back toward Sergeant Cook, Officer Phillips, and Thomas. (Responses ¶ 69; Video 4:28:28.) Briley then stands back up and steps toward Officer Sibbald. (Responses ¶ 69; Video 4:30:00-4:32:00.) Officer Sibbald, seeing Briley standing again, grabs him and forces him to the ground for a third time. (Responses ¶¶ 71, 91; Video 4:34:00-4:45:00.) Sibbald holds Briley on the ground with his knee on his chest until other officers arrive on the scene. (Responses ¶ 71; Video 4:34:00-4:45:00.)

Ultimately, both Plaintiffs were taken to the Hermosa Beach Jail where they were booked and cited. On July 19, 2003, a criminal complaint was filed against the Plaintiffs, charging them each with violations of Penal Code § 148(a)(1) (interfering with a peace officer). (Opposition

10:22-24.) The complaint was later amended, adding a charge of battery and a charge of violation of California Penal Code § 415(1) (fighting or threatening to fight in a public place) against Briley. (*Id.* at 10:24-11:1.) At a jury trial in December 2006, Briley was acquitted of the two later-added charges. On April 3, 2007, the deputy city prosecutor dismissed the § 148(a)(1) charges against both Plaintiffs. On November 15, 2007, the Plaintiffs brought a complaint against the Hermosa Beach Defendants for multiple alleged wrongs, including claims of municipal liability under 42 U.S.C. § 1983 for false arrest, excessive force, malicious prosecution, and conspiracy.

**LEGAL STANDARD**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *See id.* at 322-23. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

**ANALYSIS**

Among the numerous summary adjudication motions filed concurrently in this matter, this motion concerns municipal liability under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978) ("*Monell*"). A *Monell* claim is stated where the plaintiff has suffered a constitutional injury, and the injury is not an isolated act but is part of a greater municipal custom or policy. *Id.* at 690. Under *Monell*, "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." To establish liability under *Monell*, a plaintiff must establish that the unconstitutional acts of government employees "represent official policy." *Id*. at 694.

Custom or policy may be found where a person or entity with decision-making authority within the municipality expressly enacted or authorized an unconstitutional policy. It may also be found on evidence of "widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001). After demonstrating the existence of a custom or policy, a plaintiff must demonstrate that the custom or policy caused the constitutional injury to the plaintiff. *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). City policy "causes" an injury where it is "the moving force" behind the constitutional violation. *Id*.; *see also Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) (requiring a plaintiff to prove that his injury resulted from a "permanent and well-settled" practice for liability to attach to an injury resulting from a local government custom).

"A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). There are, however, three situations in which isolated constitutional violations are sufficient to establish a municipal "policy." *Id.* First, a municipality can be liable for an isolated constitutional violation when the person causing the violation has "final policymaking authority." *See City of St. Louis v.*

*Praprotnik*, 485 U.S. 112, 123 (1988). Second, a municipality can be liable when an official policymaker ratified a subordinate's unconstitutional actions. *See Monell*, 436 U.S. at 658. Third, a municipality may be liable when its policymakers act with "deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Christie v. Iopa*, 176 F.3d 1231, 1240 & n.7 (9th Cir. 1999).

**1. DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION**

The Hermosa Beach Defendants have moved for summary adjudication of the *Monell* claims. In their Motion, the Hermosa Beach Defendants point to the Declaration of Michael Lavin in Support of Defendants' Motion for Summary Adjudication Re Monell ("Lavin Declaration"). That declaration states that from January 1, 2001 through January 2004, the Hermosa Beach Police Department responded to 123,606 calls for service, with only 111 total personnel complaints for that period. (Lavin Declaration ¶ 6.) It states that it has always been the policy of the Hermosa Beach Police Department to treat all individuals, arrestees, and visitors to the City of Hermosa Beach in a legal, lawful, and professional manner. (*Id.* at ¶ 8.) It further states that it has always been the policy of the Hermosa Beach Police Department to properly train its officers to ensure that all individuals, arrestees, and visitors to the City of Hermosa Beach are treated in a legal, lawful, and professional manner. (*Id.* at ¶ 9.)

Based on these statements and the Plaintiffs' allegations, Defendants assert that Plaintiffs have not created a triable issue of material fact suggesting that the City of Hermosa Beach should be held responsible for alleged constitutional violations.

**2. PLAINTIFFS' ALLEGATIONS OF A LONGSTANDING CUSTOM OR POLICY**

In response, Plaintiffs argue that the City of Hermosa Beach had a longstanding custom or policy of violating the constitutional rights of its arrestees. Although Plaintiffs do not allege that the City of Hermosa Beach expressly enacted or authorized an unconstitutional policy, they do allege the existence of such a policy. Plaintiffs' allegations are based on alleged evidence of repeated constitutional violations for which the errant municipal officers were not disciplined. Allegations of a longstanding custom or policy based on a history of repeated violations must show that the custom or policy existed before the violation of a plaintiff's constitutional rights, and that the policy caused that violation. *See Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994).

At this point in the litigation, the Court has decided that the Plaintiffs did not suffer constitutional violations under their false arrest, conspiracy, or malicious prosecution claims. And Plaintiffs have not alleged that the City of Hermosa Beach committed any constitutional violations separate from the actions of its officers. Thus, Plaintiffs' only remaining claim against the City of Hermosa Beach is for excessive force. *See Green v. Baca*, 306 F.Supp.2d 903, 908 n.32 (C.D. Cal. 2004); *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002).

To show a custom or policy that resulted in the violation of Plaintiffs' civil rights, Plaintiffs must present evidence that Hermosa Beach had a custom or policy of excessive force in effect before July 4, 2003, or that the Hermosa Beach Police Department had a policy of routinely covering up complaints of excessive force before that date. To prove this custom or policy, Plaintiffs present the sworn testimony of fourteen "victims of Hermosa Beach PD abuse, deceit, dishonesty and violence against which neither Lavin nor the City of Hermosa Beach ever did anything responsible." (Opposition 6:11-14.)

One of the victims speaks about an event that occurred before July 4, 2003. (Plaintiffs' Exhibit AT.) The other victims complain of events that happened after the July 4, 2003 incident. The declarations of these later victims may be relevant, because "[w]hen a [municipality] continues to turn a blind eye to severe violations of inmates' constitutional rights – despite having received notice of such violations – a rational factfinder may properly infer the existence

of a previous policy or custom of deliberate indifference." *Henry v. County of Shasta*, 132 F.3d 512, 519 (1997). Also, "subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy." *Id.* at 520. After reading the declarations carefully, the Court determines that they complain of nine separate instances of police misconduct relevant to an unconstitutional policy that could have resulted in the violation of Plaintiffs' rights – a policy of violating citizens' rights by using unnecessary or excessive force and refusing to hear complaints about the use of force. (*See* Plaintiffs' Exhibits AJ, AK, AM, AN, AO, AP, AR, AS, AT, and AU.)

Each of the nine alleged instances involves officers of the Hermosa Beach Police Department. The declarations about those instances claim that Huntington Beach Police Officers treated the declarants roughly without cause. The alleged rough treatment includes punching, choking, pushing, and use of pepper spray. One declaration says that Officer Sellan, a Defendant in this case, told the citizen that he was a police officer and could do as he pleased. (*See* Plaintiffs' Exhibit AU.) Many of the declarations also contain allegations that the police officers lied about what happened. Most of the declarations conclude by saying that none of the officers who were responsible for the rough treatment was ever disciplined or prosecuted, and that there is no record of the incident or the citizen's complaint in the officer's personnel records. (*See, e.g.*, Plaintiffs' Exhibit AM.) These statements are bolstered by the fact that the same officer names reappear in many of the declarations, making it clear that the officers were not fired after the incidents.

Viewing this evidence in the light most favorable to the Plaintiffs, which this Court is required to do, the Court finds these alleged facts would support a jury finding that the Huntington Beach Police Department had an unofficial custom of treating citizens with excessive force and covering up their complaints. While "proof of random acts or isolated events [is] insufficient to establish custom," *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989), Plaintiffs' showing has risen above the level of isolated events. This is especially so where there were many police officers involved, *see Henry v. County of Shasta*,

132 F.3d 512, 521 (9th Cir. 1997) (finding a policy more likely where multiple officers were involved in the constitutional violation), and where one police officer is alleged to have said that he can do whatever he wants, because he is a police officer. *See Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) (finding a similar statement to be evidence of a policy of not punishing police officers for potential constitutional violations). Accordingly, the Motion is DENIED as to Plaintiffs' allegations of a longstanding custom or policy of tolerating constitutional abuse.

## 3. PLAINTIFFS' ALLEGATIONS OF A SINGLE VIOLATION SUFFICIENT TO ESTABLISH MUNICIPAL POLICY

### 3.1 Violation of Rights by a Person with Final Policymaking Authority

A municipality can be liable for an isolated constitutional violation when the person causing the violation has "final policymaking authority." *See City of St. Louis v. Prapotnik*, 485 U.S. 112, 123 (1988). Plaintiffs do not allege that the officers that allegedly used excessive force against them had "final policymaking authority." Thus, this theory is not a viable basis for relief against the city.

### 3.2 Violation of Rights by a Policymaker Acting with Deliberate Indifference

A municipality may also be liable when its policymakers act with "deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Christie v. Iopa*, 176 F.3d 1231, 1240 & n.7 (9th Cir. 1999); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (custom inferred from failure to reprimand or discharge); *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 171 (5th Cir. 1985)

("subsequent acceptance of dangerous recklessness by policymaker tends to prove his preexisting disposition and policy").

Plaintiffs allege that Chief Lavin, as an official policymaker for the City of Hermosa Beach, was deliberately indifferent to Plaintiffs' complaints of constitutional violations. Plaintiffs allege specifically that when Plaintiff Briley went to the Hermosa Beach Police Department on July 5, 2003 to make a complaint about his arrest, Chief Lavin told him to "[g]o win [his] case and come on back and we'll fill out this complaint." (Briley Deposition 250:1-2.) Plaintiffs allege that Lavin and the City failed to act on Plaintiffs' complaint until October 14, 2003, when Plaintiffs' counsel demanded an investigation. The evidence presented by Plaintiffs shows that Chief Lavin did then assign the investigation to Lieutenant Bohlin, and that he placed no restrictions on the investigation. (Lavin Deposition 107:11-108:25.) Lieutenant Bohlin interviewed all the involved officers, both Plaintiffs, and one witness, and obtained a statement from another witness. (*Id.*) Lieutenant Bohlin recommended that the complaint not be sustained. (*Id.* at 95:24-25.) On July 28, 2007, Chief Lavin wrote to Plaintiffs, advising them none of their complaints were sustained. (Plaintiffs' Exhibit AA.) This evidence does not create a genuine issue of material fact as to whether Chief Lavin demonstrated "deliberate indifference" to the Plaintiffs' constitutional rights. Chief Lavin's trusting of his officers and of the investigation made into the incident does not constitute "deliberate indifference."

Plaintiffs contend that Chief Lavin's behavior constituted "deliberate indifference" because he viewed the video, and the video blatantly shows that the Plaintiffs' rights were violated. Plaintiffs are wrong. Even viewing the video in the light most favorable to the Plaintiffs, the video shows force that, while arguably unreasonable, did not violate any clearly established law. (*See* False Arrest Order.) Accordingly, Chief Lavin's decision not to sustain the uninjured Plaintiffs' complaints did not constitute deliberate indifference to the Plaintiffs'constitutional rights. *See Joyce v. Town of Tewsbury, Mass.*, 112 F.3d 19 (1st Cir. 1997) (holding that a finding that the unsettled state of the law made it reasonable to believe that officer conduct was constitutional also precludes municipal "deliberate indifference" liability).

**3.3 Violation of Rights by Ratification of Unconstitutional Actions**

Finally, a municipality can be liable when an official policymaker ratifies a subordinate's unconstitutional actions. *See Monell*, 436 U.S. at 658. "Policy or custom may be inferred" from a showing of ratification of an unconstitutional act. *Henry*, 132 F.3d at 519 (9th Cir. 1997) (citing *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986)). "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *City of St. Louis v. Praprotnick*, 485 U.S. 112, 127 (1988); *Fuller v. City of Oakland, Cal.* 47 F.3d 1522, 1534 (9th Cir. 1995).

Plaintiffs allege that, at the time Plaintiffs were arrested, Chief Lavin was the principle policymaker for Hermosa Beach in law enforcement matters. Plaintiffs then produce the Deposition of Chief Lavin, in which he states that he watched the video of the arrest. In that deposition, Chief Lavin states that he determined that the force used in the video was "within policy." (Lavin Deposition 54:18-21.) He states that he felt that the use of force was appropriate "under the circumstances" of the hostile crowd. (*Id.* at 56:16-22.) These statements, combined with the fact that Lavin did not sustain the Plaintiffs' complaint, raise a triable question of fact as to whether Lavin ratified the Police Officer Defendants' alleged unconstitutional conduct.

Viewing the evidence in the light most favorable to the Plaintiffs, the video arguably reveals unconstitutional conduct. A jury could conclude that Chief Lavin watched that video, saw the unconstitutional conduct, and then ratified the conduct. *See Fuller*, 47 F.3d at 1535 (denying summary judgment because, viewing the evidence in the light most favorable to the plaintiff, the police chief may have seen the unconstitutionality and approved it.)

**4. CONCLUSION**

Plaintiffs have introduced evidence creating a genuine issue of material fact as to (1) whether Hermosa Beach had an express or unspoken longstanding custom or policy of constitutional violations and (2) whether Chief Lavin ratified the alleged unconstitutional acts. Plaintiffs have failed to introduce evidence creating a genuine issue of material fact as to (1) whether a policymaker actively violated their rights and (2) whether a policymaker acted with deliberate indifference towards their rights. Accordingly, the Motion is DENIED as to the custom and ratification issues, but otherwise GRANTED.

**DISPOSITION**

Defendants' Motion is DENIED in part and GRANTED in part.

IT IS SO ORDERED.

DATED: September 29, 2008

Andrew J. Guilford
United States District Judge