"O"

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BRILEY, JUSTIN THOMAS, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF HERMOSA BEACH, CHIEF MICHAEL LAVIN, JONATHAN SIBBALD, LANDON PHILLIPS, SGT. NANCY COOK, AND DOES 1-10, INCLUSIVE, <br><br> Defendants. | CASE NO. CV 05-8127 AG (SHx) <br><br> ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION OF PLAINTIFF THOMAS'S CLAIMS BASED ON *HECK V. HUMPHREY* |

This case deals with the claims of two individuals who were arrested after a short struggle at the Hermosa Beach Pier Plaza on the Fourth of July. Before the Court is the Motion of the Defendants, City of Hermosa Beach, Chief Michael Lavin, Jonathon Sibbald, Landon Phillips, and Sgt. Nancy Cook ("Hermosa Beach Defendants") for Summary Adjudication of Plaintiff Thomas's Claims Based on *Heck v. Humphrey* ("Motion"). After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court DENIES the Motion.

**BACKGROUND**

The facts of this case are set forth in this Court's order dealing with Defendants' Motion for Summary Judgment, or in the Alternative Summary Adjudication of Plaintiffs' "False Arrest" and "Excessive Force" Claims ("False Arrest Order").  The Court restates them here.

On the afternoon of July 4, 2003, Plaintiffs Christopher Briley and Justin Thomas went to the crowded Hermosa Beach Pier Plaza area with a group of friends.  (Plaintiffs' Responses to Defendants' Statements of Uncontroverted Facts and Conclusions of Law in Opposition of Motion for Summary Judgment, or in the Alternative Summary Adjudication of Plaintiffs' "False Arrest" and "Excessive Force" Claims ("Responses") ¶ 3.)  They walked along the Strand, which is a pedestrian walkway bordering the beach.  (*Id.* ¶ 4.)  During their walk, one member of the group, Randy Wareberg, encountered a man named Shaun Gallagher.  The two men began to have an argument.  (*Id.* ¶¶ 4-5.)  Their interaction caused Hermosa Beach Police Officer Jonathan Sibbald to separate them and to order them to leave the beach.  (*Id.* ¶ 6-7.)

Wareberg, Briley, and Thomas continued to walk along the Strand approximately two blocks until they reached the Pier Plaza.  (*Id.* ¶ 8; Thomas Deposition 151:9.)  Once there, in a crowded area, Wareberg again encountered Gallagher.  (Responses ¶ 8.)  The interaction on the Pier Plaza between Wareberg and Gallagher and the subsequent events is recorded on a video filmed by local college students.  (Harrell Declaration, Exhibit A ("Video").)  The following recitation of facts is drawn from facts agreed upon by the parties and from the Court's independent viewing of the video.  The Court describes portions of the video that are indisputable.  *See Scott v. Harris*, 127 S.Ct. 1769, 1774-1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by [a video], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

The video undisputedly shows Wareberg and Gallagher gesturing, speaking, and posturing as if to fight, while other civilians try to separate them.  (Responses ¶¶ 9-10; Video

2:11:00-2:32:20.) Plaintiff Thomas testified that the interaction escalated into a "group thing" between Plaintiffs' group and Gallagher's friends, and that "they all looked like they wanted to fight." (Responses ¶ 11.) Officer Sibbald then approaches Wareberg, grabs him by the throat with his left hand, and pushes him back approximately five steps before taking him to the ground. (Responses ¶ 12; Video 2:32:29-2:37:06.) Officer Sibbald holds Wareberg in a seated position on the ground and handcuffs his hands behind his back. (Responses ¶ 13; Video 2:47:28-3:02:22.) At this point, other uniformed officers appear on the scene, and they create a perimeter around Officer Sibbald and Wareberg, forcing the shouting crowd of hundreds of people to move outside of it. (Responses ¶¶ 14-17; Video 2:38:00-2:46:00.) The officers push people who do not honor the perimeter, which is approximately thirty feet in diameter. (Video 2:38:00-2:46:00.) Sergeant Cook is seen to wrench the finger of Plaintiff Thomas, who was standing inside the perimeter, while telling him to "Back up!" (Responses ¶¶ 20, 22; Video 2:40:17-2:42:00.)

At this point, the video cuts away from the action at what appears to be a pivotal moment. When the camera swings back to the action, Plaintiff Briley is seen in an altercation with three police officers. (Video 3:21:00-3:26:00.) They attempt to restrain him, one from the front, one from the back, and one from the side, and he tries to keep them away. (*Id.*) He spreads his arms and shouts, "I ain't doing shit!" before being taken to the ground. (Video 3:31:29.) The officers struggle to place his hands behind his back to handcuff him. (Video 3:32:30-3:45:20.)

While Briley and the police officers are struggling, Plaintiff Thomas seems to be misguidedly attempting to calm the situation. He enters the perimeter, moves around Sergeant Cook who is watching the struggle, approaches close to Briley and the officers, and repeatedly shouts, "Briley, kick it! Kick it!" (Video 3:24:20-3:26:00.) Sergeant Cook then notices him, puts her arm across his chest, says, "Get out of here," and pushes him back away from Briley and the other officers. (Responses ¶ 46; Video 3:25:00-3:28:00.) Despite Sergeant Cook's efforts, Thomas remains inside the perimeter and continues to attempt to move toward and shout at Briley. (Video 3:31:26-3:34:28.) He testified that he wanted to stay, instead of leaving as

3

1  ordered, because "[s]omebody had to be there to witness what was going on." (Responses ¶ 48.)
2  Eventually, as Thomas continues to approach Briley and the officers, Sergeant Cook wraps her
3  arms around Thomas's waist, pulls him away from Briley and the officers, and takes him to the
4  ground. (Responses ¶ 55; Video 3:46:00-3:48:00.) With Sergeant Cook holding his waist,
5  Thomas pushes himself back into a standing position. (Responses ¶ 56; Video 3:48:06-3:50:10.)
6  He resists Sergeant Cook's continued efforts to take him back to the ground. (Video 3:51:00-
7  3:57:00.)

8        At this point, Officer Phillips grabs Thomas around the neck and pulls Thomas to the
9  ground as Sergeant Cook holds on to his legs. (Responses ¶ 62; Video 3:57:00-3:59:20.) With
10 two officers trying to keep him on the ground, Thomas again pushes off the ground and gets to
11 his knees. (Responses ¶ 63; Video 4:00:00-4:18:00.) Members of the crowd then throw loud,
12 exploding fireworks into the circle. (Responses ¶ 64; Video 4:10:00-4:35:00.) Next, Officer
13 Sibbald walks toward Sergeant Cook, Officer Phillips, and Thomas. (Responses ¶ 65; Video
14 4:21:00.) As Officer Sibbald reaches the struggling group, he turns around and looks in the
15 direction he came from. (Video 4:24:18.) He says, "Hey!" and runs back to Briley, who is
16 standing with his hands handcuffed behind his back. (Video 4:25:11-4:27:00.) Briley was last
17 shown on the ground forty-one seconds before. (Video 3:46:00.) Officer Sibbald, reaching
18 Briley, puts his arm around his throat and takes him to the ground. (Video 4:27:00-4:26:10.)
19 Officer Sibbald then leaves Briley on the ground and walks back toward Sergeant Cook, Officer
20 Phillips, and Thomas. (Responses ¶ 69; Video 4:28:28.) Briley then stands back up and steps
21 toward Officer Sibbald. (Responses ¶ 69; Video 4:30:00-4:32:00.) Officer Sibbald, seeing
22 Briley standing again, grabs him and forces him to the ground for a third time. (Responses ¶¶ 71,
23 91; Video 4:34:00-4:45:00.) Sibbald holds Briley on the ground with his knee on his chest until
24 other officers arrive on the scene. (Responses ¶ 71; Video 4:34:00-4:45:00.)

25       Ultimately, both Plaintiffs were taken to the Hermosa Beach Jail where they were booked
26 and cited. On July 19, 2003, a criminal complaint was filed against the Plaintiffs, charging them
27 each with violations of Penal Code § 148(a)(1) (interfering with a peace officer). (Opposition
28

4

10:22-24.) The complaint was later amended, adding a charge of battery and a charge of violation of California Penal Code § 415(1) (fighting or threatening to fight in a public place) against Briley. (*Id.* at 10:24-11:1.)

At a jury trial in December 2006, Briley was acquitted of the two later-added charges. On April 3, 2007, the deputy city prosecutor dismissed the § 148(a)(1) charges against both Plaintiffs. A court found that Thomas's actions "were a violation of Penal Code § 148(a)(1) in obstructing her [the officer's] ability to keep the officer safe, to keep the crowd controlled." (Motion 6:11-13.)

On November 15, 2007, the Plaintiffs brought a complaint against the Hermosa Beach Defendants for multiple alleged wrongs, including claims for relief under California Law for Assault and Battery, False Arrest, Intentional Infliction of Emotional Distress, Negligence, and Violation of the California Civil Rights Act. Among multiple summary judgment motions, the Hermosa Beach Defendants move for summary adjudication of all of Plaintiff Thomas's Claims, based on law stated in *Heck v. Humphrey*, 512 U.S. 477 (1994).

**LEGAL STANDARD**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue

of material fact. *Celotex*, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *See id.* at 322-23. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

**ANALYSIS**

Defendants' Motion focuses on the seminal case of *Heck v. Humphrey*, 512 U.S. 477 (1984). In *Heck*, the Supreme Court held that a court should not grant a 42 U.S.C. § 1983 claim seeking damages where the plaintiff's success would necessarily imply the invalidity of the plaintiff's criminal conviction arising out of the same action at issue in the § 1983 claim. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Court held that such claims would be barred until the conviction is "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487. The Court hoped to avoid calling into question through civil adjudication matters already settled in criminal adjudication.

In *Heck*, the Supreme Court gave an example of a successful civil claim that would necessarily imply that the plaintiff's criminal conviction was wrongful. *Heck*, 512 U.S. at 486 n.6. The Supreme Court stated that a plaintiff could not bring a § 1983 claim against an arresting officer after plaintiff's conviction for resisting arrest. Defining resisting arrest as "intentionally preventing a police officer from effecting a *lawful* arrest," the Court reasoned that plaintiff's success would necessarily imply that the arrest was not lawful, and thus that the conviction was invalid. *Id.* (emphasis in original).

It has been argued that *Heck* does not apply to state law claims, but even if it did, *Heck* would not bar recovery in this case. Thus, the Court ultimately does not neeed to rule on the application of *Heck* to state law claims.

Under the *Heck* standard, this Court must look to three factors: (1) whether a judgment in favor of Plaintiff would imply the invalidity of Plaintiff's previous conviction; (2) whether Plaintiff has shown that his conviction has already been invalidated; and (3) whether any exception to the *Heck* doctrine applies. *See Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006).

At this point in the case, Plaintiff Thomas's only remaining claims arise from his allegations that the Police Officer Defendants used excessive force during his arrest. Thus, this Court must determine whether judgment in favor of Plaintiff Thomas on his excessive force-related claims would necessarily imply the invalidity of his conviction arising from the same facts. The Court concludes that it would not.

In Plaintiff Thomas's probation revocation hearing, Superior Court Judge Lori Ann Fournier held that Thomas was in violation of his probation due to the fact that "his actions [during the incident] were a violation of Penal Code section 148(a)(1) in obstructing [Sgt. Cook's] ability to keep the officer safe, to keep the crowd controlled." (Motion 6:9-14.) By deciding the Thomas violated California Penal Code § 148(a)(1), Judge Fournier necessarily decided that each of the elements of that section were satisfied: (1) that Thomas willfully resisted, delayed or obstructed a peace officer; (2) that the officer was engaged in the lawful performance of his or her duties; and (3) that Thomas knew or reasonably should have known that the other person was a police officer engaged in the performance of his or her official duties. *See People v. Simons*, 42 Cal. App. 4th 110, 1108 (1996); *People v. Wilkins*, 14 Cal. App. 4th 761, 776 (1993).

But Judge Fournier's ruling does not necessarily preclude a finding that the Defendant Police Officers used excessive force in effecting Thomas's arrest after he interfered with Sergeant Cook's performance of her duties. This Court has determined that a jury could find that Officer Phillips's alleged prolonged use of a carotid control hold on Thomas and Officer Sibbald's alleged kicking Thomas in the head were unreasonable uses of force. But both of these events occurred after Thomas interfered with Sergeant Cook. Thus, a jury could determine

that, although Thomas violated § 148(a)(1), the Defendant Police Officers used excessive force in effecting his arrest.

Because judgment in favor of Plaintiff Thomas would not necessarily imply the invalidity of Judge Fournier's parole revocation holding, the Court need not address the second and third prongs of the *Heck* analysis. The Motion is DENIED as to Plaintiff Thomas's claims arising out of his allegations of excessive force.

## DISPOSITION

Defendants' Motion is DENIED.

IT IS SO ORDERED.

DATED: September 29, 2008

_____
Andrew J. Guilford
United States District Judge